UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                   Plaintiff,<br><br>      v.<br><br>FORRESTT G. BARNES,<br><br>                  Defendant. | Case No. 3:10-CR-065-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it Defendant's Motion to Suppress Evidence (Dkt. 29). The Court conducted a suppression hearing on October 6, 2010, and the parties submitted supplemental briefing on October 13, 2010. The Court now issues the following decision.

## BACKGROUND

On October 5, 2009, Moscow Police executed a search warrant at Defendant Forrestt Barnes' residence. The search warrant was authorized by State Magistrate Judge, John C. Judge. *Gov't Ex 1*. Officer Dani Vargas provided the Magistrate Judge with a signed search warrant affidavit. *Gov't Ex. 2*. Attached as part of the affidavit was a document entitled "Statement of Officer Dani Vargas." *Id.*

The search warrant affidavit explains that on October 4, 2009, Kimberly

Atchinson, Barnes' then girlfriend, called police and reported that Barnes assaulted her. *Id.* Officer Vargas spoke to Atchinson on the phone and agreed to meet her at a local gas station. *Id.* After a brief meeting, Atchinson and Officer Vargas went to the Moscow Police station for an interview. *Id.*

While at the police station, Atchinson described a "history of domestic violence that had been occurring since approximately September 7, 2009," between herself Barnes. *Id.* Atchinson explained that she was living with Barnes at his residence. *Id.* She said that during the week of September 7, 2009, Barnes became agitated after he was contacted by two detectives who wanted to interview him about a past case. *Id.* According to Atchinson, Barnes "consumed a large quantity of alcohol" and physically assaulted her. *Id.* Atchinson stated that on or about September 11, 2009, Barnes pushed her into a door, into a wall, onto the floor, and put "his hands around her neck slightly." *Id.* She said that she sustained a "very large bruise on her right forearm that took several weeks to heal." *Id.*

Atchinson reported that Barnes "then obtained a handgun that was kept in the bedroom in a black hard plastic case, and pointed it at her." *Id.* Barnes then put a single bullet in the gun and "pulled her head next to his and pointed the gun at his head and said: 'See we could do this with one bullet and could get the both of us.'" *Id.* She reported that Barnes pulled the trigger but the gun did not fire. *Id.* She described the gun as a silver, revolver type handgun. *Id.* Atchinson told Officer Vargas that the defendant "had at least 2 handguns, one 12 gauge shot gun, one sawed-off shotgun, ammunition, and

numerous knives in his residence." *Id.* She said the guns "were stored in gun cases in the bedroom next to the dresser." *Id.*

Atchinson also described an incident occurring on October 1, 2009. She reported that Barnes hit her in the eye with the back of his left hand and told her that "she needed to know when to shut up." *Id.* This occurred after she asked him for a second time if he wanted to come to bed. *Id.* Officer Vargas observed a "bruised area under her right eye where Barnes struck her during the incident on October 1, 2009." *Id.*

During the October 4 call, Atchinson also described an incident occurring earlier that day. *Id.* She described Barnes as being "irritated." *Id.* She explained that Barnes demanded that she give him money she had set aside from her paycheck to pay rent. *Id.* Atchinson said that after giving Barnes the money he "told her to get out of his house." *Id.* Atchinson told Barnes that she wanted her money back "since she had none left." *Id.* She then "reached into his pocket and removed the $400." *Id.* Atchinson said that she refused to give the money back and Barnes pulled her to the ground by grabbing her hair and jacket. *Id.* She fell, striking her head on a coffee table. *Id.* Atchinson said she had a large "goose egg" bump on her head. *Id.*

Officer Vargas' affidavit explained that she "could see some redness and feel the 'goose egg' bump on Atchinson's head." *Id.* Officer Vargas also reported that she could also see "the skin was slightly broken where Atchinson's head hit the table." *Id.*

Atchinson said that when she began to stand up, Barnes "grabbed her by her hair and jacket and drug her out to the front porch." *Id.* Atchinson reported that she left

Barnes' residence and went to an adjacent trailer belonging to Barnes' mother, Kathryn Barnes. *Id.* Atchinson stated that Kathryn Barnes "called her a liar and pushed her out of her residence." *Id.* Atchinson then went to a friend's house where she later called the police. *Id.* Officer Vargas observed bruises on Atchinson's "left writs, her left elbow, and her right forearm that she sustained from this incident." *Id.*

After the interview of Atchinson, Corporal Blaker, Officer Swanson, Officer Foreman, and Officer Vargas went to Barnes' residence at approximately 2:07 a.m. on October 5, 2010. *Id*. Corporal Blaker knocked on the door and asked Barnes to come outside to speak with the officers. *Id.* Barnes came to the door several times and stated that it was too cold and too early to go outside. *Id*. Barnes then went back into a back room and said he needed to get something. *Id.* He came outside wearing jeans and a baggy sweatshirt. *Id.* He sat on the porch, and Corporal Blaker asked him to stand up. *Id*. He stood up quickly and made a move toward the residence. *Id.* Corporal Blaker and Officer Vargas detained Barnes and handcuffed him. *Id.* Corporal Blaker arrested Barnes, and Officer Keen transported him to jail. Barnes was not questioned about the incidents relayed to the officers by Atchinson.

At 11:28 a.m. that morning, October 5, 2009, the Magistrate Judge issued the search warrant. The search warrant authorized a search of Barnes' residence for the following items:

- Firearms, knives and other instrumentalities of injury, ammunition, holsters, cases, magazines, portions or elements of ammunition or other items associated with

firearms, knives and other instrumentalities of injury,
and receipts or documentation from purchases or
acquisition of such items;

- Items belonging to Kimberley Atchinson including
clothing, documents, personal items, etc.;
- Indicia of residency or cohabitation in, or ownership or
possession at the premises and any of the above items.

*Gov't Ex. 1.*

At 1:55 p.m. that day, officers searched Barnes' residence pursuant to the search

warrant. Among other things, they recovered a sawed-off shotgun with a barrel length of

approximately twelve inches. *Gov't Ex. 3*. That gun is the subject of the Indictment in

this case.

## ANALYSIS

**1.    Probable Cause**

The Fourth Amendment guarantees "[t]he right of the people to be secure in their

persons, houses, papers, and effects, against unreasonable searches and seizures." *U.S.*

*Const. amend. IV.* It goes on to state that "no warrants shall issue, but upon probable

cause, supported by Oath." *Id.* "Probable cause means a 'fair probability' that

contraband or evidence is located in a particular place." *U.S. v. Kelley*, 482 F.3d 1047,

1050 (9th Cir. 2007) (*citing Illinois v. Gates*, 462 U.S. 213, 246 (1983). Whether a fair

probability exists "depends upon the totality of the circumstances, including reasonable

inferences, and is a commonsense, practical question." *Id.* (Internal quotation and citation

omitted). "Neither certainty nor a preponderance of the evidence is required." *Id.*

Although it is sometimes difficult to determine whether an affidavit supports a probable

cause finding, "resolution of doubtful or marginal cases in this area should largely be determined by the preference to be accorded to warrants." *Id*. at 1050-51.

Barnes argues that the affidavit in this case lacked a basis for finding probable cause. Barnes takes issue with Officer Vargas' failure to corroborate the information obtained from Atchinson.

Information provided by victims, even hearsay statements, are presumed reliable. *United States v. Henderson*, 721 F.2d 662, 665 fn 1 (9th Cir. 1983) (*citing United States v. Armstrong*, 654 F.2d 1328, 1335 (9th Cir. 1981). Here, Atchinson was the victim so her statements are presumed reliable. However, the presumption of reliability does "not dispense with the requirement that the informant furnish underlying facts sufficiently detailed to cause a reasonable person to believe that a crime had been committed and the named suspect was the perpetrator." *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1444 (9th Cir. 1991). The Ninth Circuit has held that officers may not rely solely on a victim's claim, "but must independently investigate the basis of the witness' knowledge or interview other witnesses." *Hopkins v. Bonvicino*, 573 F.3d 752, 767 (9th Cir. 2009).

Here, Atchinson gave specific details of the abuse. In her affidavit, Officer Vargas explained that Atchinson told her that four days earlier, on October 1, 2009, Barnes "hit her in the eye with the back of his left hand and said she needed to know when to shut up." *Gov't Ex. 2*. Officer Vargas explained that she observed that Atchinson had a "bruised area under her right eye" consistent with Atchinson's report. *Id.* Officer Vargas also explained that Atchinson reported that earlier that day, on October 4, 2009, Barnes

"pulled her hair and her jacket from behind and pulled her down to the ground." *Id.* During this incident, Atchinson's head hit a table. *Id.* Barnes then "grabbed her by her hair and jacket and drug her out to the front porch." *Id.* Atchinson told Officer Vargas that she had a "large goose egg bump on the right side of her head" and "bruises on her left wrist, her left elbow, and her right forearm." *Id.* The search warrant affidavit explained that Officer Vargas could "feel" the "goose egg bump on Atchinson's head," and observed that her skin was red and "slightly broken where Atchinson's head hit the table." *Id.* Officer Vargas also observed the bruises on her wrist, elbow and forearm, consistent with Atchinson's description of Barnes dragging her out of the residence. *Id.* Thus, Officer Vargas' observations of Atchinson corroborated Atchinson's statement.

The context of Atchinson's statement also supports her statement. The fact that Officer Vargas met Atchinson at a convenience store rather than her residence is consistent with her report that Barnes physically assaulted her at their residence. *Id.*

Officer Vargas also explained in her affidavit that Atchinson told her about an incident where Barnes obtained a handgun which was kept in the bedroom in a black, hard plastic case, and pointed it at Atchinson. *Gov't Ex. 2.* Officer Vargas sated that Atchinson informed her that Barnes then pulled Atchinson's head next to his and pointed the gun at his head and said: "see we could do this with one bullet and could get the both of us." *Id.* Officer Vargas explained that Atchinson described the handgun as a silver, revolver type handgun. *Id.* Officer Vargas also noted that Atchinson told her that Barnes had at least two handguns, one 12 gauge shotgun, and a sawed-off shotgun in the

residence.  *Id.*

Based on "the totality of the circumstances, including reasonable inferences,"
Officer Vargas had a sufficient basis to believe that at least one crime had been
committed and Barnes was the perpetrator.  *Kelley*, 482 F.3d at 1050.  She had a
sufficient basis to believe that the gun used in one of the crimes – a silver, revolver type
handgun – was in a black, hard plastic case in the residence.  Thus, there was probable
cause to issue a search warrant for the silver, revolver type handgun.

There also may have been probable cause to search the residence for a sawed-off
shotgun.  As noted above, Atchinson told Officer Vargas that Barnes possessed a
sawed-off shotgun.  *Gov't Ex. 2*.  The Ninth Circuit has stated that "a sawed-off shotgun
in private hands is not an intrinsically innocent object.  The possession of it is a serious
crime, except under extraordinary circumstances."  *U.S. v. Porter*, 335 F.2d 602, 607 (9th
Cir. 1964).  Moreover, although it is possible a sawed-off shotgun is not illegal because it
is not too short, the Government points out that Atchinson specifically drew a distinction
between the sawed-off shotgun and another shotgun possessed by Barnes.  It may be a
reasonable inference to assume the gun was an illegal sawed-off shotgun.  However, the
Court need not make the determination of whether there was probable cause to search for
the sawed-off shotgun because of the plain view doctrine.

As explained above, there was probable cause to search for a silver, revolver type
handgun.  In searching for the handgun, the seizure of the sawed-off shotgun would have
been valid.  "[I]t is well established that under certain circumstances the police may seize

evidence in plain view without a warrant." *Coolidge v. New Hampshire*, 403 U.S. 443,

465 (1971).  Generally speaking, an item is in plain view if it can be seen by the officer

from a vantage point where the officer has a right to be.  Under the plain view doctrine,

evidence is properly admissible at trial where two requirements are met: "officers must be

lawfully searching the area where the evidence is found and the incriminatory nature of

the evidence must be immediately apparent." *U.S. v. Stafford*, 416 F.3d 1068, 1076 (9th

Cir. 2005) (*quoting Roe v. Sherry*, 91 F.3d 1270, 1272 (9th Cir. 1996) (other citations

omitted).  To be immediately apparent, the officer must have probable cause to believe

the seized item is contraband. *Arizona v. Hicks*, 480 U.S. 321, 326 (1987).  Application

of the plain view doctrine turns on the Court's factual findings with respect to the search.

 Here, Officer Vargas' affidavit stated that the silver, revolver type handgun was

kept in a black, hard plastic case in Barnes' residence.  Assuming a valid search warrant

for the handgun, the officers would have been lawfully searching inside the black, hard

plastic case.  Inside that case were three guns. *Gov't Ex. 5*.  One was inside a short brown

leather case, with just the handle showing. *Id*.  It would have been immediately apparent

to the officers when they opened the case that the firearm in the small brown leather case

was either a handgun like the one described in the affidavit or an illegal sawed-off

shotgun.  Thus, seizure of that firearm would have been lawful based on the plain view

doctrine.

 The problem for the Government is that even if there was probable cause to search

for the handgun and the sawed-off shotgun, the search warrant was overbroad.  Thus, as

explained below, the search warrant was invalid.

**2.     Overbroad Warrant**

The Fourth Amendment also requires that a warrant describe with particularity the "things to be seized." *U.S. Const. amend. IV*; *U.S. v. Brobst*, 558 F.3d 982, 993 (9th Cir. 2009). "Search warrants must be specific in both particularity and breadth." *Brobst*, 558 F.3d at 993. "Particularity is the requirement that the warrant must clearly state what is sought. Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based." *Id.* (Internal citation and quotation omitted). A search warrant must describe the objects to be seized with enough specificity to enable the officer conducting the search to reasonably identify the objects authorized to be seized. *Id.* This, in turn, prevents "general, exploratory rummaging in a person's belongings." *Id.* In determining whether a search warrant's description is sufficiently specific to comply with the Fourth Amendment, the Court must consider the following questions:

> (1) whether probable cause exists to seize all items of a particular type described in the warrant; (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not; and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued.

*Millender v. County of Los Angeles*, __ F.3d __ (9th Cir. 2010, August 24, 2010) (2010 WL 3307491, *5).

Here, Barnes challenges the specificity of the description of the items to be seized

along with the probable cause to make the seizure. Barnes argues that there was

insufficient probable cause to seize "knives or any other instrumentality of injury" as

described in the search warrant. The Government concedes that there is merit to this

argument. The Government acknowledges that Officer Vargas' explanation that other

weapons were to be seized "in order to corroborate [Atchinson's] statements" has been

recently rejected by the Ninth Circuit. *Millender*, 2010 WL 3307491, *10. (Holding that

officers were not justified in searching for evidence that was not contraband or evidence

of a crime for purposes of aiding their subsequent prosecution). The Court agrees.

However, the Government contends that the search warrant affidavit validly

provided a basis for the search and seizure of the silver, revolver type handgun used on

September 11, 2009. As explained above, the Court agrees that the affidavit provided

such a basis. But the Ninth Circuit's decision in *Millender* is also instructive here.

In that case, the warrant authorized a search for essentially any device that could

fire ammunition, any ammunition, and any firearm-related materials. *Id*. *6. The suspect

in that case was suspected of spousal assault with a deadly weapon. The Ninth Circuit

acknowledged there was no dispute that the officers had probable cause to search his

residence for a black sawed-off shotgun with a pistol grip which had been used in the

crime. *Id*. However, the search warrant affidavit did not set forth any evidence indicating

that the suspect owned or used other firearms, that such firearms would be considered

contraband or evidence of a crime, or that any such firearms were likely to be present at

the residence. The court stated that "[n]othing in the warrant or the affidavit provide[d]

any basis for concluding there was probable cause to search for or seize the generic class of firearms and firearm-related materials listed in the search warrant." *Id*. Accordingly, the court concluded that probable cause did not exist to seize all items of those particular types. *Id*.

Still, the court in *Millender* went on to explain that the rule that police must have probable cause for each and every item searched does not always invalidate warrants authorizing a search for classes of generic items. *Id*. A broader search warrant may be valid if it establishes standards sufficiently specific to "reasonably guide the officers in avoiding seizure of protected property and to allow judicial review to determine whether the instructions were followed and legitimate property and privacy interests were protected." *Id*. (Internal quotations and citations omitted). But, the court also recognized other cases of overbroad warrants, including a finding that "a warrant based on an affidavit describing 'a few stolen diamonds' could not validly authorize a search for a broad category of 'gemstones and other items of jewelry' because such a warrant would provide[ ] no basis for distinguishing [the stolen] diamonds from others the government could expect to find on the premises." *Id*. (Citing *United States v. Spilotro*, 800 F.2d 959, 965 (9th Cir. 1986)).

The Ninth Circuit in *Millender* also noted that "warrants may sometimes authorize a search for classes of generic items if the government was not able to describe the items more particularly in light of the information available to it at the time the warrant was issued." *Id*. at *7 (Citing *Spilotro*, 800 F.2d at 963). The court gave an example where it

upheld a search warrant authorizing search and seizure of a broad class of potentially misbranded drugs, at least in part, because the Government did not have information allowing it to describe the drugs more specifically. *Id.* (Citing *U.S. v. Storage Spaces Designated Nos. 8 and 49 Located at 277 East Douglas*, 777 F.2d 1363, 1370 (9th Cir.1985)). However, the court specifically stated that "where the police do have information more specifically describing the evidence or contraband, a warrant authorizing search and seizure of a broader class of items may be invalid. Thus, when [u]pon the information available to it, the government knew exactly what it needed and wanted, it was unconstitutional for a warrant to authorize a massive reexamination of all records" in a tax case. *Id.* (Citing *VonderAhe v. Howland*, 508 F.2d 364, 370 (9th Cir. 1974)).

In *Millender*, the Ninth Circuit determined that the officers had a precise description of the firearm used by the suspect in connection with the assault, and knew exactly what it needed and wanted. Therefore, the question of whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued cut against the validity of the warrant. *Id.* at *8.[1]

This case is similar to *Millender*. With respect to the first question answered in

_____

[1] The Ninth Circuit has found that more specific standards may be contained in an affidavit, rather than the warrant itself if "(1) the warrant expressly incorporate[s] the affidavit by reference and (2) the affidavit either is attached physically to the warrant or at least accompanies the warrant while agents execute the search." *Millender*, 2010 WL 3307491, *7 (*Citing U.S. v. Kow*, 58 F.3d 423, 429 n. 3 (9th Cir.1995). However, the Government concedes that the "cure by affidavit" rule does not apply in this case because the search warrant did not incorporate by reference the affidavit. *Pl.'s Supp. Br.* at 2, Dkt. 40.

determining whether a search warrant's description is sufficiently specific to comply with the Fourth Amendment – whether probable cause exists to seize all items of a particular type described in the warrant – the Court concludes that it was not. Officer Vargas' affidavit explains that three weeks earlier, Barnes obtained a handgun that was kept in the bedroom in a black, hard plastic case, and pointed it at Atchinson. *Gov't Ex. 2*. The affidavit explains that Atchinson informed Officer Vargas that Barnes then pulled Atchinson's head next to his and pointed the gun at his head and said: "see we could do this with one bullet and could get the both of us." *Id*. Officer Vargas noted that Atchinson described a "revolver type handgun," which was "silver and opening to the side to load the ammunition." *Id*. Moreover, the search warrant affidavit specifically called for the search and seizure of this specific firearm. *Id*. The search warrant affidavit also described a sawed-off shotgun as being kept in the residence. *Id*.

Under these circumstances, there was probable cause to search for a specific, silver revolver type handgun – and perhaps a sawed-off shotgun. But there was nothing in the affidavit to form a basis for concluding there was probable cause to search and seize a generic class of firearms, knives and instrumentalities of injury.

The second question – whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not – also supports a finding that the warrant was overbroad. Although the search warrant affidavit indicated that Barnes owned other guns, it did not set forth any evidence that such firearms would be considered contraband or evidence of a crime, and the warrant did

nothing to differentiate these other firearms from the silver revolver or sawed-off shotgun.

Finally, the third question – whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued – also weighs in favor of finding the warrant too broad. Atchinson specifically described the handgun as a silver, revolver type handgun, and generally identified a sawed-off shotgun. Although Officer Vargas said as much in her affidavit, the search warrant failed to include this information. Instead, it allowed for the search of all firearms, knives and instrumentalities of injury. *Gov't Ex. 1.* Likewise, in arguing that there was probable cause to search for the sawed-off shotgun, the Government made the point that "Atchinson specifically drew a distinction between the two shotguns which [Barnes] possessed." *Pl.'s Resp.* at 12, Dkt. 36. The search warrant could have easily made that same distinction, but did not.

The Court concludes that a search for any firearm, knives, and other instrumentalities of injury, without specifying a silver, revolver type handgun or sawed-off shotgun, lacks sufficient particularity. Based on the information available to it, the Government knew exactly what it needed and wanted, so it was constitutionally improper for the warrant to authorize such a massively broad search for all firearms, knives and instrumentalities of injury. *Id.*

The following statement made by the Ninth Circuit in *Millender* compels this Court to make such a finding:

> Although we are deferential to a magistrate's determination of
> probable cause and consider the language of a warrant and
> affidavit in a common sense and practical manner, here we are
> unable to identify any basis, let alone a 'substantial basis, for
> probable cause to search and seize the broad category of
> firearm and firearm-related materials set forth in the warrant.
> Accordingly, we find ourselves in that rare situation where we
> must conclude that the magistrate lacked a substantial basis
> for issuing the warrant for this broad range of items.

*Millender*, 2010 WL 3307491, *11.  This statement is at least as true in this case where

the search warrant authorized not only a search for a broad category of firearms and items

associated with such firearms, but also a search for a broad category of knives and

instrumentalities of injury and items associated with knives and instrumentalities of

injury.

### 3. Severance

 Even when a search warrant is overbroad, partial suppression may be allowed

under the Ninth Circuit's "doctrine of severance, which allows a court to strike from a

warrant those portions that are invalid and preserve those portions that satisfy the fourth

amendment." *U.S. v. Sears*, 411 F.3d 1124, 1129 (9th Cir. 2005) (Internal quotation and

citation omitted).  The Ninth Circuit has allowed severance – suppressing only the articles

seized pursuant to the invalid portions of a warrant – when a warrant lacked particularity

because of unduly broad language.  *Id.*  Still, complete suppression is appropriate "when a

warrant is wholly lacking in particularity."  *Id.*  "The doctrine of severance requires that

identifiable portions of the warrant be sufficiently specific and particular to support

severance."  *Id.* (Citing *U.S. v. Spilotro*, 800 F.2d 959, 967 (9th Cir.1986)).

Thus, in *Sears*, the Ninth Circuit found that although the items to be seized pursuant to the search warrant were not set forth in separate paragraphs, it was feasible to excise eight offending words that rendered the warrant overbroad. *Id*. But in *Spilotro*, the Ninth Circuit found it problematic that items were not set forth in textually severable portions. *Id*. (Citing *Spilotro*, 800 F.2d at 968).

But, the Ninth Circuit also considers the relative size of the valid and invalid portions of a search warrant in deciding whether severance is appropriate. The Ninth Circuit has declined to sever and allow seizure of items which were only a relatively insignificant part of an otherwise sweeping search, *Spilotro*, 800 F.2d at 967, but did sever when only one of thirteen descriptions was insufficiently particularized, *U.S. v. Gomez-Soto*, 723 F.2d 649, 654 (9th Cir. 1984). *Id*. Severance has also been allowed when "documents of the persons or entities for which there was probable cause constituted the focus, and the vast majority, of the files searched." *Id*. (Citing *In re Grand Jury Subpoenas Dated December 10, 1987*, 926 F.2d 847, 858 (9th Cir.1991).

Here, the search warrant was divided into three separate bullet points as follows:

- Firearms, knives and other instrumentalities of injury, ammunition, holsters, cases, magazines, portions or elements of ammunition or other items associated with firearms, knives and other instrumentalities of injury, and receipts or documentation from purchases or acquisition of such items;
- Items belonging to Kimberley Atchinson including clothing, documents, personal items, etc.;
- Indicia of residency or cohabitation in, or ownership or possession at the premises and any of the above items.

*Gov't Ex. 1.*  It would be easy to sever the warrant into three portions based on the bullet points.  One could also possibly sever the first category into four sub-categories: (1) firearms and items associated with firearms; (2) knives and items associated with knives; (3) instrumentalities of injury and items associated with instrumentalities of injury; and (4) receipts or documentation from purchases or acquisition of such items.

However, even if we do that, the reference to firearms is wholly lacking in particularity.  Based on the search warrant, there was no way for officers searching Barnes' residence to know there was sufficient probable cause to search for and seize a silver, revolver type handgun, and possibly a sawed-off shotgun, but not other guns in Barnes' residence.  This is particularly troublesome where Officer Vargas had specifically stated in her affidavit that Barnes did, in fact, have other guns in his residence.  Under these circumstances, there is no way to sever the search warrant in a way that would allow a search for firearms for which there was probable cause, but not for firearms for which there was not.[2]  Accordingly, the search warrant is not severable in this case.

## 4.      Good Faith Exception

The Government also argues that even if the search warrant was overbroad, the Court should not suppress the evidence because the officers relied on the search warrant

---

[2] The fundamental problem with the warrant which precludes severability, is its complete and glaring failure to identify the particular firearms for which there was probable cause to search Barnes's residence.  If the warrant had specifically authorized a search for a "silver, revolver type handgun" or a "sawed-off shotgun," but then gone on to broadly identify "firearms, knives and other instrumentalities of injury," as additional objects of the search, severance would have been possible.  But where there was no specificity in identifying the items for which probable cause had been established, severance is simply not an option.

in good faith.  The Government contends that the Supreme Court's decision in *U.S. v. Leon*, 468 U.S. 897 (1984) supports their argument.  In *Leon*, "the Supreme Court held that the Fourth Amendment's exclusionary rule does not prevent the use of evidence 'obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause.'"  *U.S. v. Huggins*, 299 F.3d 1039, 1052 (9th Cir. 2002), (*Quoting Leon*, 468 U.S. at 900.

The good faith reliance exception applies when officers relied on the search warrant in an objectively reasonable manner.  *U.S. v. Crews*, 502 F.3d 1130, 1136 (9th Cir. 2007).  However, the Ninth Circuit has identified four situations where the good faith exception does not apply because reliance would be per se unreasonable: (1) the affiant misled the magistrate judge by either making a false statement or recklessly disregarding the truth; (2) the magistrate judge wholly abandoned her role by acting as a "rubber stamp" instead of a neutral official; (3) the warrant is facially deficient in detail as to the place to be searched or the items to be found that officers could not have reasonably presumed the warrant valid; and (4) the affidavit was so lacking in indicia of probable cause that no reasonable officer could rely upon it in good faith.  *Id*.

Exceptions 1, 2 and 4 do not apply here.  There is no evidence that Officer Vargas made a false statement or recklessly disregarded the truth.  There is also no evidence that the Magistrate Judge was not a neutral official.  Finally, the affidavit is not lacking in any indicia of probable cause.  On the contrary, as explained above, based on the affidavit,

there was probable cause to search for the silver, revolver type handgun and possibly the sawed-off shotgun.

However, as thoroughly explained above, the search warrant is so facially deficient in detail as to the items to be found that officers could not have reasonably presumed the warrant valid. The most glaring deficiency in detail is the language allowing a search for "instrumentalities of injury" and "other items associated with . . . instrumentalities of injury." *Gov't Ex. 1*. It is difficult to think of many every-day items found in most residences which could not be considered instrumentalities of injury. Almost any hard object could be used for blunt force trauma. Almost any rope or wire could be used for strangulation. Even a pillow could be used to cause injury such as suffocation. Examples could fill pages and pages of this decision. Add to that anything "associated" with these items and the Court is hard pressed to think of anything in a typical residence which would not be subject to the search warrant in this case.

Under these circumstances, the Court finds that the search warrant was so facially deficient in detail as to the items to be found that the officers could not have reasonably presumed the warrant valid. The warrant did not prevent the "general, exploratory rummaging in a person's belongings" the Fourth Amendment was meant to prevent. , *Brobst*, 558 F.3d at 993. Accordingly, the good faith exception does not apply.

## 5.      Suppression of Evidence Seized and Barnes' Statement

For the reasons explained above, the Court will suppress evidence derived from the execution of the search warrant, including the sawed-off shotgun. Barnes also asks

the Court to suppress his statement given to the ATF agent as he was released from state custody on March 30, 2010. The Court is not altogether sure what statement was made, but based on Defendant's Brief in Support of Motion to Suppress Evidence, it appears Barnes said something to the effect of "isn't that a pistol" in response to the ATF agent's statement that Barnes was under arrest for possession of a sawed-off shotgun. At any rate, the Government did not respond to Barnes' request that his statements be suppressed if the search warrant was found invalid.

The "exclusionary rule extends to both direct and indirect products of . . . unlawful searches." *Crews*, 502 F.3d at 1135. Thus, verbal evidence which derives so immediately from an unlawful entry . . . is no less the 'fruit' of official illegality than the more common tangible fruits of the unwarranted intrusion." *Id.* (Internal quotation and citation omitted). Under the circumstances of this case, the Court will also suppress the statements made by Barnes to the ATF agent.

## ORDER

**IT IS ORDERED:**

1.      Defendant's Motion to Suppress Evidence (Dkt. 29) is **GRANTED**.

DATED:  **October 28, 2010**

Honorable B. Lynn Winmill
Chief U. S. District Judge